IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

STEVEN ESTER                                                                                          PLAINTIFF

v.                                    No. 4:14–CV–537-SWW–BD

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                                DEFENDANT

## Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge Susan W. Wright.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Wright may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

Steven Lamar Ester seeks judicial review of the denial of his second application for social security disability benefits.[3] Mr. Ester stopped working on September 11, 2010, the day he had a motorcycle accident. He broke his right clavicle and right wrist and bases disability on injuries flowing from the accident.[4]

**The Commissioner's decision**. After considering the application, the Commissioner's ALJ identified fracture of right wrist, status open reduction internal fixation, as a severe impairment,[5] but determined that Mr. Ester could do some light work.[6] Because a vocational expert identified available work,[7] the ALJ determined Mr. Ester was not disabled and denied the application.[8]

---

[3]SSA record at pp. 141 & 149 (applying on Oct. 21, 2011 and alleging disability beginning Sept. 11, 2010). *See id*. at pp. 73 & 76 (showing first application was denied on June 10, 2011).

[4]*Id*. at p. 206 (basing disability on problems with the right shoulder and right foot, loss of use of right hand, chronic nerve pain syndrome, and depression).

[5]*Id*. at p. 14.

[6]*Id*. at p. 15.

[7]*Id*. at pp. 63-65.

[8]*Id*. at pp. 22-23.

After the Commissioner's Appeals Council denied a request for review,[9] the decision became a final decision for judicial review.[10]  Mr. Ester filed this case to challenge the decision.[11]  In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[12]  This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

**Mr. Ester's allegations**.  Mr. Ester maintains that the ALJ failed to fully and fairly develop the record; he says the ALJ should have asked a treating physician to answer written interrogatories and should have ordered an orthopedic neurological examination.  He further argues that the ALJ should have identified complex regional pain syndrome (CRPS) as a severe impairment and determined whether his wrist

---

[9]*Id*. at p. 1.

[10]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[11]Docket entry # 1.

[12]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

fracture met listing 1.07. He also maintains that the ALJ mis-characterized medical opinion evidence and mis-used hypothetical questions to reach the unfavorable decision. For these reasons, he argues, substantial evidence does not support the ALJ's decision.[13]

**Applicable legal principles**. For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show that Mr. Ester could do a reduced range of light work. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[14] The ALJ further limited Mr. Ester to light work that would permit a person to work with a 10% loss of fine motor skills of the dominant right arm.[15] The court must determine whether a reasonable mind will accept the evidence as adequate to show Mr. Ester can work with this limitation.

**Credibility undermines Mr. Ester's challenge**. Mr. Ester based his claim on injuries from the accident, but his arguments focus on CRPS. The clavicle fracture healed fairly quickly, but CRPS complicated the wrist fracture. CRPS is a chronic pain condition that can follow an injury to an arm or leg; it is characterized by pain

---

[13] Docket entry # 10.

[14] 20 C.F.R. §§ 404.1567(b) & 416.967(b).

[15] SSA record at p. 15.

"disproportionate to the severity of injury, usually accompanied by other changes … such as increased sensitivity of the skin, changes in skin color and texture, swelling and stiffness of joints, changes in skin temperature, or changes in nail and hair growth."[16] The most common trigger is wrist fracture.[17] Mr. Ester's orthopedic surgeon (the orthopedist) diagnosed CRPS in February of 2011.[18]

Doctors treat CRPS with physical therapy, psychotherapy, medication, sympathetic nerve blocks, surgical sympathectomy, neural stimulation, and intrathecal drug pumps.[19] Outcomes vary, but medical literature indicates symptoms "reduce significantly over the first 6 to 13 months."[20] Occasionally, a person is "left with unremitting pain and crippling, irreversible changes despite treatment."[21]

---

[16] 1-C Attorneys' Dictionary of Med. C 28143 & 28144.

[17] G. Lorimer Moseley, Robert D. Herbert, Timothy Parsons, Samantha Lucas, Jacobus J. Van Hilten & Johan Marinus, Intense Pain Soon After Wrist Fracture Strongly Predicts Who Will Develop Complex Regional Pain Syndrome: Prospective Cohort Study, 15 The J. of Pain 16 (2014).

[18] SSA record at p. 384.

[19] Nat'l Inst. of Neurological Disorders and Stroke, Nat'l Inst. of Health, Complex Regional Pain Syndrome Fact Sheet (June 2013).

[20] Debbie J. Bean, Malcolm H. Johnson & Robert R. Kydd, Critical Review, The Outcome of Complex Regional Pain Syndrome Type 1: A Systematic Review, 15 The J. of Pain 677 (2014).

[21] Nat'l Inst. of Neurological Disorders and Stroke, Nat'l Inst. of Health, Complex Regional Pain Syndrome Fact Sheet (June 2013).

The orthopedist prescribed physical therapy, psychotherapy, medications and sympathetic nerve blocks.[22] Mr. Ester obtained no psychotherapy, but the prescribed medications, physical therapy, and sympathetic nerve blocks improved his symptoms.[23] In October 2011, the orthopedist described CRPS as under "reasonable control."[24] This characterization indicates that Mr. Ester's symptoms were controlled with treatment. "An impairment which can be controlled by treatment or medication is not considered disabling."[25]

Despite improvement, the orthopedist predicted "wrist pain is always going to be a problem given the original injury."[26] The dispositive question is "how severe that pain is."[27] Because Mr. Ester alleges disabling pain, the evaluation of credibility played an important role in the ALJ's determination. Mr. Ester did not directly challenge the evaluation of his credibility, but the court cannot properly review the decision, or address Mr. Ester's arguments, without reviewing the credibility evaluation. The court

---

[22]SSA record at pp. 368, 384 & 410.

[23]*Id*. at pp. 410 & 507.

[24]*Id*. at p. 507.

[25]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[26]SSA record at p. 516.

[27]*Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

must review the credibility evaluation because Mr. Ester's primary complaint is disabling pain and pain is largely subjective.[28]

The ALJ determined that Mr. Ester overstated his pain, so the court must determine whether a sufficient basis existed for discounting his complaints of pain. "The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole."[29] The ALJ discussed credibility in a fair amount of detail, but three matters stand out: (1) evidence of malingering, (2) reported activities of daily living, and (3) reported symptoms.

Evidence of malingering. The ALJ ordered two mental diagnostic exams based on reports of major depression. Both examiners characterized Mr. Ester as malingering.[30] Those characterizations weigh heavily against credibility.

Reported activities of daily living. During the second mental exam, Mr. Ester said he could perform most activities of daily living autonomously, cook meals, clean his bedroom and bathroom, and wash his clothing.[31] Nine days earlier, he denied doing household chores and claimed he needed assistance with personal grooming.[32] The

---

[28]*Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995).

[29]*Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

[30]SSA record at pp. 530-31 & 563-67.

[31]*Id.* at p. 567.

[32]*Id.* at pp. 248-49.

inconsistency in the reports weighs against credibility.  The temporal proximity of reporting makes the inconsistency particularly probative.

<u>Reported symptoms</u>.  Mr. Ester's treatment history is distinguished by a 17-month gap between his last visit with the orthopedist and his first visit to an indigent care clinic.  At the latter visit, he complained about depression and chronic neuropathy in the right shoulder.[33]  The omission of wrist pain or CRPS is inconsistent with his reasons for disability.  The ALJ had a sufficient basis for discounting credibility.

Discounted credibility provides the backdrop for considering Mr. Ester's arguments.  The arguments provide no basis for relief for the following reasons:

> 1. **No issue exists with record development**.  The ALJ has a duty to fairly and fully develop the record as to the matters at issue.[34]  The residual effects of Mr. Ester's injuries were at issue.  Treatment notes address the injuries in detail.
>
> Mr. Ester complains because the ALJ did not send the orthopedist written interrogatories, but the record contains the orthopedist's statement.  The orthopedist stated, Mr. Ester "has persistent pain, stiffness and weakness in right hand and wrist with complex regional syndrome."[35]  The statement addresses the matters at issue.  Crucial matters were developed.[36]

---

[33]*Id*. at p. 632.

[34]*Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974).

[35]SSA record at p. 573.

[36]*Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) ("An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped.").

Mr. Ester argues that he needed an orthopedic neurological exam to develop the record about CRPS, but the record is developed about CRPS. A nerve conduction study addresses medial nerve compression: "chronic and mild axonal neuropathies of right median and ulnar nerves distal to the wrist, mostly likely due to past trauma" and "mild axonal neuropathy of the right superficial radial nerve at the wrist."[37]  Computed tomography shows the surgical fixation screw does not impinge into a carpal joint.[38] Treatment notes are detailed: full digital range of motion, little range of motion in wrist, full range of motion in elbow and shoulder,[39] slight skin shininess, increased hair and nail growth, and somewhat hypersensitive to touch.[40]  This information provides sufficient medical evidence to determine whether Mr. Ester was disabled.[41]

2. **No harm flowed from the identification of severe impairment**. Mr. Ester says the ALJ should have identified CRPS as a severe impairment.  The ALJ identifies the claimant's severe impairments at step two of the disability-determination process.[42]  That step requires the claimant to show he has a severe impairment, but it does not require the ALJ to identify every severe impairment.  If the claimant shows he has at least one severe impairment, he proceeds to the next step of the disability-determination process.  There can be no reversible error where the record shows that the ALJ considered all of the medical evidence and all of the

---

[37]SSA record at p. 497.

[38]*Id*. at pp. 512-13.  This point is important because the screw would have to be removed if it impinged into a carpal joint.  *Id*. at pp. 507 & 516.

[39]*Id*. at p. 507.

[40]*Id*. at p. 516.

[41]*Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled.").

[42]20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii).

claimant's impairments.[43] The ALJ considered all of the medical evidence and all of Mr. Ester's impairments. The ALJ discussed CRPS on pages 7 and 8 of the decision.[44]

3. **The wrist injury does not meet listing 1.07**. Listing 1.07 is a musculoskeletal listing. Meeting the listing requires "a fracture of the shaft of the … radius, or ulna;" that is, a fracture of the shaft of a lower arm bone. Diagnostic imaging showed chip fractures of the triquetral bone and ulnar styloid, a linear fracture through the epiphysis of the distal radius, and a linear fracture through the radial styloid.[45] These findings state fractures in the end of, and the bony extension of, a lower arm bone, but not in the shaft of an arm bone. Mr. Ester admits his wrist fracture "may not precisely meet the requirements of Listing § 1.07,"[46] but argues that his CRPS required discussion of medical equivalence. No reason existed for discussing medical equivalence because the shaft of an arm bone was not fractured. Mr. Ester suggests the ALJ ignored listing 1.07, but the ALJ considered musculoskeletal listings.[47]

4. **Instead of mischaracterizing medical opinion evidence, the ALJ did not describe it**. State agency medical experts reviewed the medical evidence at three points — 9 months post-accident, 14 months post-accident, and 18 months post-accident. The experts provided the following chronological opinions about Mr. Ester's ability to work: (1) light work with occasional climbing, balancing, right hand controls,

---

[43]*Bowen v. Yuckert*, 482 U.S. 137, 156-57 (1987) (O'Connor, J., concurring) (explaining that the Social Security Act authorizes the Commissioner to weed out applications by claimants who cannot possibly meet the statutory definition of disability at step two of the disability-determination process).

[44]SSA record at pp. 18-19.

[45]*Id*. at pp. 341-42.

[46]Docket entry # 10, p. 14.

[47]SSA record at p. 15 ("There are no medical listings that precisely meet or medically equal the criteria described in any of the impairments … related to the musculoskeletal system found in Section 1.00 ….").

and limited reaching, handling, and fingering, feeling;[48] (2) light work with the right arm used as assistive device only;[49] and (3) light work with right arm used as assistive device only.[50] The opinions differ in respect to the need for postural limitations and using the right arm and right shoulder. The differences created a conflict in the medical evidence.

When evidence conflicts, the ALJ must resolve the conflict before determining the claimant's ability to work.[51] The ALJ resolved the conflict by accepting the common thread — light work — and rejecting the variances, because the ALJ found a 10% loss of fine motor skills of the right arm. The following statements reflect the resolution: "The undersigned concurs with [the state agency medical consultants'] finding that the claimant … should be limited to light exertional level work. However, based on the evidence of record as a whole, the undersigned does not find that the claimant's right wrist condition is more than 10% limiting."[52] These statements omit description, but they do not mis-characterize the medical opinion evidence.

The dispositive question is whether the record provides a sufficient basis for rejecting limitations with the right arm. The ALJ rejected the limitations 32 months post-accident. Three factors support rejecting the limitations: (1) the 17-month gap in medical treatment — 12 months which occurred after the last medical review; (2) subsequent evidence of

---

[48]*Id*. at pp. 489-96.

[49]*Id*. at pp. 521-28.

[50]*Id*. at p. 561.

[51]*Dipple v. Astrue*, 601 F.3d 833, 836 (8th Cir. 2010) ("It was the ALJ's task to resolve the differences between these consultative evaluations in the light of the objective evidence."); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians.…The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.").

[52]SSA record at p. 21.

malingering; and (3) the omission of complaint about the wrist five days before the hearing. The nerve conduction study supports a 10% loss in fine motor skills.[53]

5. **Nothing suggests the ALJ misused the hypothetical questions**. If a claimant with a non-exertional impairment shows he cannot do his past work, the ALJ consults a vocational expert to determine whether work exists that the claimant can do.[54] Mr. Ester argues that the ALJ misused the process to support the decision.

The process itself undermines the argument. If a claimant disagrees with a reconsideration level decision, he may request a hearing. During the hearing, the claimant may explain why he feels he is disabled, describe his symptoms, present a witness, submit additional medical evidence, and cross-exam the vocational expert. The process creates new evidence. Because it creates new evidence, the ALJ cannot determine the claimant's ability to work until after the hearing. Out of necessity, the ALJ must use hypothetical questions — during the hearing — to obtain information to reach a final decision.

Here, the hypothetical questions addressed three scenarios: (1) full range of light work, (2) light work with 10% loss of fine motor skills of dominant right hand, and (3) light work with 10% loss of function in dominant right hand.[55] The vocational expert identified available work for the first two scenarios, but indicated work probably did not exist for the last scenario.[56] Mr. Ester suggests that the ALJ conformed the decision to the vocational expert's answers, but the suggestion relies on conjecture.

---

[53]*Id*. at p. 497.

[54]20 C.F.R. §§ 404.1520 & 416.920.

[55]SSA record at pp. 63-65.

[56]*Id*.

Mr. Ester sustained painful injuries that prevented him from working for some time period, but that alone provides no basis for disability benefits. The law considers a person disabled if his impairments are so severe — considering his age, education, and work experience — as to prevent him from doing any kind of substantial gainful activity existing in significant numbers in the national economy, for at least 12 continuous months, regardless of whether such work exists where he lives, whether a job vacancy exists, or whether he would be hired if he applied for work.[57] Substantial evidence shows Mr. Ester did not meet this standard. Here the evidence was adequate to show that Mr. Ester could work with a 10% loss of fine motor skills of the dominant right arm.

## Conclusion and Recommendation

Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the undersigned magistrate judge recommends DENYING Mr. Ester's request for relief (docket entry # 1) and AFFIRMING the Commissioner's decision.

Dated this 18th day of August, 2015.

_____
UNITED STATES MAGISTRATE JUDGE

---

[57] 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(B).